UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA A. GANZIE,

                Plaintiff,                    Civil Action No. 17-12801
                                                          Honorable Denise Page Hood
                                                          Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]**

Plaintiff Patricia Ganzie ("Ganzie") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Ganzie is not disabled under the Act is not supported by substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, Ganzie's Motion for Summary Judgment (**Doc. #11**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.     REPORT

### A.     Procedural History

Ganzie filed prior applications for DIB and SSI in January 2013.  (Tr. 62).  On February 6, 2014, ALJ Mary Ann Poulose ("ALJ Poulose") issued a decision denying those applications.  (Tr. 62-70).  On November 28, 2014, the Appeals Council denied review.  (Tr. 74-77).

Ganzie then filed new applications for DIB and SSI on February 13, 2015, and May 14, 2015, respectively, alleging disability as of February 7, 2014.  (Tr. 188-94).  At the time of that alleged onset date, Ganzie was almost 60 years old.  (Tr. 33).  She had completed high school but had no further education.  (Tr. 210).  She has prior work history as a laundry laborer, but she stopped working on October 14, 2010, because of her medical conditions.  (Tr. 210).  She alleges disability primarily as a result of diabetes, hypertension, and back pain.  (Tr. 209).

After Ganzie's 2015 applications for SSI and DIB were denied at the initial level on May 18, 2015 (Tr. 107-10, 121-24), she timely requested an administrative hearing, which was held on August 15, 2016, before ALJ Jan Leventer ("ALJ Leventer" or "the ALJ").  (Tr. 31-50).  Ganzie, who was represented by attorney Heidi Walken, testified at that hearing, along with vocational expert Harry Cynowa.  (*Id.*).  On September 1, 2016, ALJ Leventer issued a written decision finding that Ganzie is not disabled under the Act.  (Tr. 21-26).  On June 26, 2017, the Appeals Council denied review.  (Tr. 1-6).  Ganzie timely filed for judicial review of that final decision on August 25, 2017.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Ganzie's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, ALJ Leventer found that Ganzie is not disabled under the Act. At Step One, the ALJ found that Ganzie has not engaged in substantial gainful activity since February 7, 2014, the alleged onset date. (Tr. 23). At Step Two, the ALJ found that she has the medically determinable impairments of diabetes, hypertension, obesity, hyperlipidemia, and degenerative disc disease. (Tr. 24). However, the ALJ found that none of Ganzie's impairments, whether considered alone or in combination, are "severe," in that they did not significantly limit (or were not expected to significantly limit) her ability to perform basic work-related activities for twelve consecutive months. (*Id.*). As a result, the ALJ concluded that Ganzie has not been under a disability since February 7, 2014. (Tr. 26).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D. Analysis**

As set forth above, ALJ Leventer found that Ganzie has five medically determinable impairments: diabetes, hypertension, obesity, hyperlipidemia, and degenerative disc disease. (Tr. 24). ALJ Leventer then concluded that none of these impairments, whether considered alone or in combination, are severe within the meaning of the Act. (*Id.*). Ganzie now argues that this conclusion is not supported by substantial evidence. (Doc. #11 at 10-12).

In concluding that Ganzie does not have a severe impairment, ALJ Leventer cited *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), noting that, absent new and material evidence of a change in condition, she was bound by ALJ Poulose's prior finding that Ganzie's impairments were non-severe. (Tr. 25). ALJ Leventer then found "no new and material evidence to justify not adopting [ALJ Poulose's] finding" that Ganzie does not have a

5

severe impairment. (*Id.*). For the reasons set forth below, this conclusion is not supported by substantial evidence.

At Step Two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act …." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.* As this Court has explained:

> The Sixth Circuit court has determined that the step-two requirement serves as a de minimis threshold hurdle in the disability process. The inquiry at step two functions as an administrative convenience to screen out claims that are totally groundless from a medical perspective. An impairment will be considered non-severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience. Under this standard, the question ... is whether there is substantial evidence in the record supporting the ALJ's finding that [the plaintiff] has only a slight impairment that does not affect her ability to work.

*Betty v. Comm'r of Soc. Sec.*, 2016 WL 1105008, at *3 (E.D. Mich. Feb. 17, 2016) (internal quotations and citations omitted).

In this case, Ganzie argues that ALJ Leventer erred in finding "no new and material evidence to justify not adopting [ALJ Poulose's] finding" that she did not have a severe impairment. (Tr. 25). Ganzie points out that, after the previously adjudicated time period, "There are multiple references in her treating physician's records that [her] diabetes and hypertension are poorly controlled." (Doc. #11 at 10). While the Court agrees with the Commissioner that the medical evidence is "sparse" (Doc. #13 at 8), the problem is that, fairly read, the evidence produced by Ganzie is new and material, in that it shows a worsening of her impairments that precludes application of *Drummond*. *See, e.g., Drogowski v. Comm'r of Soc. Sec.*, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011) ("Plaintiff misapprehends the scope of [the *Drummond*] test. Plaintiff must not merely present new and material evidence, but that evidence must show that plaintiff's condition *deteriorated* from the state of her condition at the time the ALJ made the decision." (emphasis in original)).

Indeed, the record indicates that Ganzie treated for years with Stephen Warnick, M.D. for hypertension, diabetes, and hyperlipidemia. (Tr. 25, 269-81, 292-305). The ALJ noted that, in March 2014, Ganzie's "diabetes was doing well and her blood pressure was down to near goal with the current regimen." (Tr. 25, 280). The ALJ also noted that, at her next visit to Dr. Warnick, on May 19, 2014, Ganzie's blood pressure was "high but lower than in past" and that she reported no hypertension-related symptoms. (Tr. 25, 277). What the ALJ failed to mention, however, is that at this same visit, Dr. Warnick decreased Ganzie's metformin dose (due to complaints of nausea), increased her aldectone dose, and suggested possibly referring her to a

7

nephrologist when she obtained insurance, as she was "on multiple [blood pressure] meds and [had] possible aldosterone problems." (Tr. 278).[1]

Similarly, the ALJ referenced a June 2014 visit to Dr. Warnick, saying "it was noted that her sugars were doing well on low dose metformin" and "no hypertension symptoms were reported[.]" (Tr. 25, 275). Again, however, the ALJ selectively cited to this record, failing to mention that, at the same visit, Dr. Warnick increased Ganzie's dose of amlodipine, added Norvasc, and indicated that if her blood pressure was no better in two months, she would need to see a nephrologist. (Tr. 276).

ALJ Leventer then concluded her review of Dr. Warnick's treatment notes by saying:

> Treatment notes from September 2014 to October 2015 reflect that although her diabetes and hypertension were poorly controlled, there were no associated symptoms. By May 2016, her sugars were better in the morning and blood pressure better today.

(Tr. 25 (internal citations omitted)). In reality, however, Dr. Warnick's treatment notes tell a much different story. On September 24, 2014, Ganzie's blood pressure was "elevated"; Dr. Warnick made changes to her medication regimen, indicated that the doses of her new medications would need to be titrated up, and said she was "[c]lose to needing nephro consult" for her uncontrolled high blood pressure. (Tr. 272-73). In February 2015, Ganzie's diabetes and hypertension were again "poorly controlled"; her medications were increased; and it was noted that "if still no improvement for [blood pressure] goal near 140/90, will [consult] nephro." (Tr.

---

[1] That same day, Dr. Warnick also completed a "Medical Assessment of Ability to Do Work-Related Activities," opining that Ganzie is limited to lifting ten pounds (due to dizziness caused by her blood pressure medications), and standing/walking four hours total in an eight-hour day. (Tr. 266-68). He further opined that Ganzie requires breaks every hour; will frequently be off task due to pain or other symptoms; and would miss more than four days of work per month. (*Id.*). Ganzie challenges ALJ Leventer's decision to give this opinion limited weight. (Doc. #11 at 12-14). Because the Court is recommending remand on other grounds, it need not pass on the merits of this argument. On remand, however, the ALJ should evaluate this opinion in accordance with the treating physician rule. *See* 20 C.F.R. §§ 404.1527, 416.927.

272). In October 2015, it was noted that Ganzie was taking five blood pressure medications, but her blood pressure was "reading still 180/100s." (Tr. 299). As a result, her Lisinopril dose was increased and she was referred to a nephrologist for evaluation and treatment.[2] (Tr. 301). Additionally, her blood sugar level was elevated, and her diabetes medications were discussed at length – including the possibility of starting her on insulin. (*Id.*). However, Ganzie preferred to try another oral medication, so a new prescription was added in an attempt to control her diabetes. (*Id.*). Treatment notes from November 2015 indicate that Ganzie was suffering from severe tooth pain; she had been scheduled to see the nephrologist, but this appointment was deferred by the specialist because the tooth pain was causing her blood pressure to spike. (Tr. 296). Finally, as set forth above, the ALJ specifically noted that at Ganzie's last visit to Dr. Warnick, in May 2016, "her sugars were better in the morning and blood pressure better today." (Tr. 25). The ALJ failed to mention, however, that at this same visit, Ganzie's blood sugar was 434, an insulin shot was administered in the office, and blood tests were ordered. (Tr. 293-94). The very next day, after these test results were received by Dr. Warnick's office, Ganzie was called and directed to go straight to the nearest urgent care or emergency room to "have labs and EKG done" because her potassium level was critically high (a sign of acute kidney failure or chronic kidney disease).[3] (Tr. 292).

In addition to Dr. Warnick's treatment notes, the record also contains the results of a consultative examination performed by Bina Shaw, M.D. on April 30, 2015. (Tr. 283-90). As

---

[2] Indeed, the treatment notes indicate as follows with respect to this referral to a specialist: "[Hypertension patient] is on 5 [blood pressure] agents with poor [blood pressure] control, [diabetes mellitus], [chronic kidney disease] stage 3, please evaluate and treat." (Tr. 301). As there is no indication in ALJ Poulose's decision, or in earlier treatment records, that kidney disease was diagnosed – or even suspected – this fact at least seems to suggest that Ganzie's condition had worsened since the time of the first decision. Other records related to Ganzie's kidney problems are discussed below. The ALJ should carefully address this issue on remand.
[3] *See* https://www.mayoclinic.org/symptoms/hyperkalemia/basics/causes/sym-20050776 (last accessed March 23, 2018).

the ALJ noted, Ganzie reported a history of hypertension, diabetes, and back and knee pain, but her blood pressure was 112/60 that day. (Tr. 26, 283-84). An x-ray of the lumbar spine showed degenerative changes.[4] (Tr. 26). Dr. Shaw opined that Ganzie could sit, stand, and walk for eight hours per day (with intermittent rest periods every four hours for 20 minutes), bend 40 degrees, and lift at least 20 pounds without difficulty. (Tr. 285). She further opined that Ganzie should avoid squatting, climbing, and machine operation, as well as highly cognitive work. (*Id.*). In other words, Dr. Shaw's opinion is inconsistent with the ALJ's finding that Ganzie's impairments do not significantly limit her ability to perform basic work activities.

In sum, ALJ Leventer applied *Drummond* and found "no new and material evidence" to justify deviating from ALJ Poulose's Step Two finding that Ganzie does not have a severe impairment. In reaching this conclusion, ALJ Leventer highlighted certain instances in the record where Ganzie's diabetes was "doing well" or her "blood pressure was down to near goal" or she reported "no associated symptoms." (Tr. 25). The problem, however, is that, at the same time, ALJ Leventer failed to mention, let alone meaningfully discuss, large portions of these very same medical records which at least seem to show that both Ganzie's diabetes and blood pressure were poorly controlled and worsened over time. Indeed, the evidence demonstrates that Ganzie's hypertension medications were routinely increased; when oral medication failed to control her diabetes, insulin was considered; and she was eventually referred to a nephrologist for evaluation and treatment of suspected chronic kidney disease. Yet, rather than

---

[4] Ganzie also argues that remand is required because this x-ray is missing from the certified court transcript. (Doc. #11 at 15). Apparently this document was entered into the record by the ALJ and reviewed by the Appeals Council, but subsequently removed and replaced with a sheet stating only "THIS PAGE HAS BEEN REMOVED BECAUSE IT BELONGS TO ANOTHER SSA NUMBER HOLDER[.]" (Tr. 290). The Commissioner does not contest that this x-ray was removed from the record in error. Again, because the Court is recommending remand on other grounds, it need not consider in detail the merits of this argument. On remand, however, care should be taken to ensure that all relevant medical evidence is made a part of the record.

acknowledging and addressing this potentially conflicting evidence, ALJ Leventer simply highlighted those portions of Dr. Warnick's treatment notes that support her ultimate finding. While the Court is cognizant that an ALJ need not address every piece of evidence in the record, *see Kornecky*, 167 F. App'x at 508, she does not fairly discharge her duties when she fails to discuss significant contradictory portions of the very records on which she relies the most. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (citing *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) and *Boulis–Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011)).

Here, ALJ Leventer's determination that Ganzie did not produce new and material evidence of a worsening in her condition is not supported by substantial evidence. Moreover, had ALJ Leventer properly considered the evidence as a whole, rather than omitting mention of the numerous records that seem to demonstrate growing concern over her uncontrolled diabetes and hypertension, it certainly appears that Ganzie would clear the "*de minimis* hurdle" of establishing a severe impairment at Step Two. *Despins*, 257 F. App'x at 929. While the Court recognizes the relative lack of medical evidence in the record and the possibility that Ganzie might not ultimately prevail on her claim of disability, for the reasons discussed above, the ALJ's flawed Step Two finding warrants remand.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, Ganzie's Motion for Summary Judgment (**Doc. #11**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g),

Case 2:17-cv-12801-DPH-DRG ECF No. 14, PageID.400 Filed 03/27/18 Page 12 of 12

this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

| | |
|---|---|
| Dated: March 27, 2018<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2018.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager

12